This is Johnson v. Ameren, and for the appellant, Mr. Berry, the athlete, Mr. Wilson, and you may proceed. Good morning. Thank you for the opportunity to present the appellant's case, your argument, and the opportunity to answer the question. Counsel, I'm going to ask you to speak up just a little bit. That mic does not amplify your voice, so just record. It helps to record. I apologize. As the court of law ordered, this case involves an allegation by the plaintiff of a violation, essentially, of the trust tax, and damage to this property as a result of activities and actions taken by the defendant, Ameren. The property of the plaintiff, he has owned it since 1991, and has enjoyed the meadow area, the Smoky Valley, the trees, the wildlife, and as he testified, certain areas designated for such things as not only the wildlife, but also specials. One tree was a little rusted that shouldn't go out in the reeds. What had occurred over the course of the time since his ownership there had previously been a number of attempts at maintenance and turning, and there were not an issue. Then the issues came up, which are alleged to be the property, unordered location, without notice, and again, the easement that was drafted, or conveyed in May of 1926, did not mandate notice, did not require notice, but had always been the previous, I believe, Mr. Johnson testified to 10 or 12 years, there was a notification. We're going to come out and we're going to maintain the property. Well, counsel, I'm glad you mentioned the easement, because I was going to ask you, did the easement require notice? So, given that it did not, where does that leave us on this notice issue? The notice issue, I think, comes about as a result of the course of conduct between the parties. It is something that they had identified, participated in, and transacted over the course of the previous, at least 10 to 12 years, by a very amicable arrangement. Again, no question, legally there was no notice required on the easement, and it was clearly stipulated that the easement exist, and it was with the property, both down and in the circle. And that became, obviously, the main issue of the case. It was pleaded by the defendant as an affirmative defense. It was responded to, and the easement exists, and it's existed since way before the plaintiff ever acquired the property. The plaintiff, during the course of the testimony, identified actions taken by the defendant which damaged his property, and damaged the property unnecessarily. The one issue, which is somewhat bisected here, is to what extent does the easement allow the defendant to maintain the property, to clear the property, to cut down on grievance? Again, the easement was pleaded by the defendant as an affirmative defense. This case was resolved under a 2-11-10 motion at the course of the plaintiff's case. There was no testimony by the defendant. There was no identification as to the extent of the damage to the easement. And what I'm getting at here is, there was testimony during the course of the plaintiff's case, that there were one number of agents of the defendant. They came up as close to the house as Elizabeth Johnson testified. When she was just exiting the shower, she could see the shadow right by the front side of the home. Whether or not that location is within the course of the easement, we never got to. Well, counsel, do we know what the shadow was? Can we attribute the shadow to Amarant? Did anyone? We have to draw the conclusion that at that time is when Amarant had agents out on the property. At that time, there were people out there maintaining the property. Unfortunately, with many cases of criminal damage to property, you never actually have a video. You never have somebody come up and say, well, I was to the right of your window, I'm related to Amarant. There has to be some conclusion drawn from the circumstantial evidence that's available. And in this case, the timing, the activity, the actions, and the location upon the exit of the property, through the portion of the north side of the fence that had been cut to gain access, all of those things were facts that the plaintiff submitted. And, yes, absolutely 100% conclusive? No. But consistent with the allegations, consistent with what occurred on the property at that time, and consistent with what each of the plaintiffs' witnesses testified to, remains the fact that there was activity close enough to the house to physically see a shadow. And there clearly cannot be something that's contemplated within the course of the easement. Now, the easement was drafted back. Now, when you say clearly something not contemplated within the easement, you're talking about being that close to the house? Yes. Okay, and that brings me to the easement gave them the power, gave Amarant the authority to trim or remove trees that interfered with the power line, basically. No question. Was there any evidence submitted that that involved a certain distance from the house or anything of that nature? I mean, how do we know whether or not it interfered or that it did not interfere just based on, well, it's too close to the house? And that is precisely my point. The easement was pleaded as an affirmative defense. The obligation to go forward and identify the framers of that easement would be on the defendant who pleaded that as an affirmative defense. The plaintiffs testified that there was damage to their property. The defendant is saying, okay, we'll admit there was damage to the property. There were trees cut, there was vegetation poisoned, to that extent. But the defendant has the obligation to then identify and offer evidence in a way that would specify, are we talking 50 feet from the standard which supports the lines? Are we talking directly under the lines? Are we talking 30 or 40 feet? Because the testimony by the plaintiff was that there were trees cut, there was vegetation sprayed well outside of the lines, well without a drop from the overhead lines. What I think, and Judge Foley is a fantastic judge, an admirable judge, I think when we got to the point of arguing with Judge O'Brien, she interpreted the easement as being, well, they pretty much want the property to do whatever they want. They can't. There has to be some testimony concerning parameters of that easement. Is it 40 feet, 50 feet? Is it below the line? Well, you stipulated to the easement, right, that the easement existed and the language in the easement. Absolutely. We stipulated to the fact the easement exists and the language in the easement. And so what language in the easement limits, other than interfering with the power lines, what language limits AMRA? At that point, we stipulated to the easement tech that AMRA could maintain the lines. And a simple reading of that would mean maintaining the lines. So directly under the lines? Shortly outside the lines? We don't know because the defendant never put on any testimonies to what was required by the defendant to enforce the easement as the dominant party. The servant testified that in his position, the actions of the defendant exceeded the parameters of the easement. And again, it's not the plaintiff's job to prove up the defendant's permanent defense. If the defendant, as in the case here, if AMRA is relying upon the easement and saying everything we did was well within the parameters of the easement, it might be an argument, but there is no testimony. But isn't it your burden to basically prove that what AMRA did exceeded the easement? Isn't that your burden? It is because at that point... Well, it sounds like you're switching. You're putting that burden on AMRA when you're saying they have to prove that their actions were within the easement. But given they pledged it as an affirmative defense, you have to show that their actions exceeded the easement. I would say the plaintiff has to establish clearly the elements of incriminating property as a result of the trespass. More cognizant, the whole point is to the affirmative defense being the easement. However, the parameters of the easement, we're saying the action taken exceeded the parameters of the easement. There was no testimony concerning what the easement actually contained, and that is a significant problem. I would quote the one case, but I don't know because it's a 123 decision. I don't fit this problem. Then that would not be appropriate. But in that case, they were talking about an easement from back in 1946, I believe. What we have here is there remains an obligation on the defendant to establish and prove it's an affirmative defense. They're saying we cut the trees, we damaged the property, we did everything. We're saying it was beyond any affirmative defense you may have, whether it be easement necessity or otherwise. While we must meet and establish, as I stated, and I would agree with the court, I'm not trying to talk out of both sides of my mouth, but when it comes to the point of what the parameters of the easement are, that's the key issue, and that is something that the defendant never established, never put on any proof, never stated in any way what is customary, what they were looking at, what they were trying to accommodate, and they couldn't establish that within the very language of the easement, which is very sketchy, abstracted back in 1926. So I think anything that's contemplated there was, well, nothing like what we have today. I mean, trees get much larger, accommodation, there are competing utility lines. There are a lot of other issues now that didn't exist in 1946, but that's not our fault. We didn't plead the easement as an affirmative defense. The defendant did. And as such, the defendant has the obligation to state or prove by some competent testimony or evidence everything we did was within the terms of the easement. Everything we did was to perpetuate the proper running of the easement. Everything we did was proper. The plaintiff has the obligation, and I believe met the obligation, of stating that it was damaged to the property to acknowledge the easement, but there's no terms on the easement. Clearly, the easement doesn't run all the way up to the house. I mean, is the defendant saying that? The easement shouldn't say that. The easement says maintaining the lines, and that's it. The burden is not, in my opinion, on the plaintiff to say what the parameters of the easement actually are. The burden at that point shifts to the defendant to prove their own defense and state and show by competent testimony or evidence what is customary, what is in the practice, what is necessary, what is maintained. Do they have to cut down every tree that's 24 feet in length? Do they have to go 10 feet outside the parameters of the actual utility lines? We never heard that because the 1110 motion was granted in the proposed case. So that is the key issue that I don't think the plaintiff would have had the obligation to interpret what the defendant meant by easement, to hire a survey engineer to go out there and locate, to draw a line. We, as the plaintiff, do the elements in the case that we have. The objection to the plaintiff's recovery is the easement, and the defendant has the obligation to prove up their own defense, and they did not do that in this case for any part of their defense. Do you have any questions on the easement issue? I do not. Thank you. One point, the other procedural point that I made, and I'll apologize in advance as I get to the trial court. The 1110 motion is to be considered by the court at the close of the plaintiff's case. Much as in the Dwyer case, if, for example, in that case the court, I believe, said, well, I'm not going to grant you a motion now, go ahead and file your evidence and we'll consider it later on. You can't do that. And that's not what happened here. No, that's not what happened here. What happened here, and again, this is my apology in advance. In my opinion, I think 1110 is very clear. I think at the close of the plaintiff's case, I think it's before the defendant commences his case in Inglewood, North Seattle, and I am asking for a different interpretation. I did not find case law. I did not find statutory authority. But I am under the understanding that the plaintiff's case is the plaintiff's case. The defendant's case can be commenced early on, a witness taken out of a war testimony kit or the exhibit's offering, and admitted during the plaintiff's case in chief. And I think it would be a forfeit of a 1110 option if the offer and that exhibit is admitted. Did you make that objection in front of Judge Foley? It was included in the motion. I mean the objection based on the fact that you're alleging that the defendant started their case and therefore would have been inappropriate. It was included in the motion. It was. But at the time that it was done. At the time the exhibit was offered? At the time that she ruled on the motion. I did. Okay. It's in the record. Here's the question though. If it would be not unusual of trial practice to be cross-examining a plaintiff's witness and want to refer to an exhibit. Absolutely. If that exhibit were introduced and that exhibit impeached or contradicted the plaintiff's witness, wouldn't every plaintiff's lawyer be able to suggest in opposition to motions at the end of the plaintiff's case, wait a minute, they already started their case by tactically introducing an exhibit, which the trial court admitted. And obviously they were using it as a sword and a shield at what they thought was an appropriate time in the case. I agree. Just two weeks ago I came across the same thing. My practice has always been, and obviously not appropriate, but in that scenario I would tend to the exhibit. I would make reference to it. But I would not offer it into evidence until the defendant's case is achieved. And I've done that a number of times, and I don't know why I've done it. It never really came up specifically like it has here. In a case such as that, like I said a couple of weeks ago, the same scenario you're talking about, the idea of false evidence on cross-examination, I did refrain from offering them into evidence until my case achieved. So I didn't even rely on a motion for rectifying a false informant's case. Procedurally, I completely understand that. I'm not trying to rewrite that part of the law. I'm not trying to rewrite anything. I'm just saying if you make reference to an exhibit, if you offer it, if you identify it, there's a big difference between then down the road, before your case is achieved, if you offer and never admit it. And that's what happened here. Exhibits were referred to. Your support can take full consideration at that point, and the defendant has an open case achieved. I think once the defendant's exhibit is offered and admitted, that is part of the defendant's case. I'm clearly not requesting that the exhibit be offered and admitted at that point. There can be clear reference to a decent exhibit and not necessarily make them part of the record officially. As a matter of fact, at one point during the argument, I thank counsel for the respondent referring to an evidence deposition that we had taken of one of their agents. And the court actually asked, are you asking that that be admitted with evidence at this time? Well, it was in the record, but it had not yet been referred to at all. All in all, no, that will be in our case achieved. Well, actually, the trial court limited any reference to that too, didn't it? Yes, yes, absolutely. Because it was in the record. I guess my point is, though, at that stage, when you make the decision, procedural decision, to offer and admit the exhibit, I think you've opened up the defendant's case. And counsel, I already asked you this, but I want to make sure that we're clear. So you included this issue in the post-trial motion, and you also made an objection at the time the motion was made. For the admission of the exhibits? No, the motion for dismissal based on 1110. I did make arguments to that. As a matter of fact, I remember part, when I had identified that, in the, I think counsel Latham pointed out that I switched plaintiff and defendant in the reference in my motion to reconsider. Because I think I had said. Well, but I'm not talking about in your motion to reconsider. I'm talking about at the time of the trial. I mean, we're talking about the fact that you need a contemporaneous objection and including it in your post-trial motion. So what I'm asking about is, did you make a contemporaneous objection? It's the admission of the exhibits? No, the 1110 motion. I recall doing so. But based on that these exhibits were admitted during what you're calling the defendant's case. Essentially saying the defendant's already opened his case. That there was a procedural bar. Did you make that objection? I recall doing so. And I do recall including that in my post-trial motion. Okay. Thank you, counsel. You'll have time on rebuttal. Good morning. May it please the court. Mr. Berry, Tom Wilson on behalf of the government. First to address your last question, Justice Oberlein. The plaintiff's counsel in this case at the time of the 1110 motion made a comment that the exhibits had been admitted. He did not say, I object to the motion under 1110 because the defendant has already commenced his case and has therefore waived the motion according to that. Okay. I'd like to address all of the plaintiff's argument by first placing the issues in this case in context based on the evidence. And I can refer to the specific portions of the record. The case begins in October 19th, 2016 actions. And that's in the complaint that was filed. And what the plaintiff alleged in that case is that the defendant undertook a course of conduct on October 19th. After some motion practice, we got to the second amendment complaint which is what we're going to try on. And the plaintiff in that second amendment complaint alleges in paragraph three, and this is the record of C71, that the defendant undertook a course of conduct beginning but not limited to October 19th. We then, and also in the second amendment complaint in paragraph six, this is where the defendant, excuse me, the plaintiff itemized the damages that they were claiming. It specifically identifies the interim recoverable in the treatment of the father for which they won $19,000. We then did some discovery and asked the plaintiff where they got the amount that they were claiming for the treatment. And we were provided an interest in interrogatories and document production identifying Mr. Nassif as one of the plaintiff's first witnesses who was testifying against the trees. They produced a document itemizing the 11 trees. In the second amendment complaint, they said we cut. We then entered into a stipulation, and the stipulation does two things. First, it identifies the easement and the language of the easement. And second, it identifies 11 trees. Three that were cut on October 19th, and eight that were cut on December 28th. In the original complaint, which was verified, and thus is a judicial admission, Mr. Johnson admitted that Ameren has an easement on the property. He admitted that we have the right to come on the property and maintain the easement. He even uses language that the plaintiff understands the needs of the children easement and the corrective action. All that is judicial admission. So we get to this issue at trial about what is it that the plaintiff proved that Ameren did to constitute a trespass. Well, the trespass, obviously, is entering onto a land without whatever permission. So we have a case where the plaintiff has stipulated to the court, we have whatever permission to come on his land, we have whatever permission to cut trees in North Carolina power lines. So we get to Mr. Johnson's cross-examination, and the first thing I did with him is ask him, wait a minute, you're talking about December 28th. We arranged to come on your property. You scheduled that, and by the way, you signed these permits, which are two of the defendant's exhibits. In order to establish, you gave us permission to cut these specific eight trees. Why are you suing us? And he said, well, I'm not suing you for those. That's not part of this case. So what we're really down to is October 19th. What happened then? We admit we came on and cut three trees. Well, the only evidence as to what we cut on October 19th is the plaintiff's daughter's testimony that as she was leaving the house, she observed some men working down in the back part of the property underneath the power lines, and she heard a chainsaw. The plaintiff in this case did not prove his case because I would analogize it to if I give Ms. Kasiba an easement to come on my property, and I say, come on my property between the hours of 9 in the morning and 5 at night. And then I sue her, and I say, you come on my property, and that's all I prove. You came on my property. But I agree she has this easement. Have I proven a trespass to my property? If I haven't proven somehow that she's outside the scope of the easement. So it begins with the plaintiff, and he didn't prove his case. As to the issue about offering the exhibits, first the plaintiff forfeited that, clearly by not raising the contemporary in this way. And there's nothing in 1110, certainly the argument was not made at the time where the court believed that the defendant had commenced his case in chief. Clearly, when I referenced the evidence deposition, Judge Foley stopped me and said, wait a minute, we're not there yet. Clearly, she was not anything like that. So based on the history of the pleadings, what was the issue that was tried in the lack of proof in the claim to prove a trespass, that is an entry onto the claim without medical permission, we would ask the court to affirm the judgment. And I'll sit down and listen to what the court has to say. I have a question that is really not. Well, Mr. Berry would say it's part of the facts of the case. I would say it's a matter of public policy. I don't know whether Ameren listens to you, but wouldn't it be a good idea to continue that level of communication that apparently first existed in a case like this? It seems to me that a lot of problems, and this is editorial commentary, between utilities and municipalities and homeowners is the lack of communication. And, you know, it sounds to me that this was a good part of it, since apparently in earlier times, Mr. Johnson was able to get along with the utility, and the utility was able to get along with him. I would agree with you, Your Honor, certainly many of the issues that I think utilities do address. One of the surest ways to get somebody upset is when you couldn't treat them on their property. True. I tried two cases last year. One of them was in front of a judge who was on a similar issue. And if we had gotten to the defendant's case, we would have proven that the Ameren representative called Mr. Johnson the day before and left him a voicemail, and he did not call her back. And that's why I was asking him questions about, what was your cell phone number at this time, and you got a phone call, and so on. So the point is very much understood, and I would convey that to my client. He also indicated that he did not recall receiving gifts, Thank you. Thank you, Your Honor. Mr. Berry? Just briefly, if I might, I think I just want to get through the record. And to respond to one of the questions that you had, whether or not it was brought up during the course of the hearing. When you were arguing on the 1110 motion, I did make reference to, I was arguing the notice of testimony that was submitted, and I made this statement at the very end. And I would just suggest one more thing. The defendant is offered, and the court has admitted defendants, 12, 13, and 14, I believe. And that was part of my objection to the 1110 motion. I made that during my objection to the 1110 motion being offered. Again, I didn't cite any authority, because I couldn't find any authority. And I understand the sequence, as Justice McIntyre pointed out. I've done it myself. I've referred to a number of defendants during the defendant's case and represented them during the course of the plaintiff's case. But to all of these that have been admitted, I think at that point, there is a line of demarcation. You have opened your case. You have started the defendant's case. It would be similar to what happened in Dwyer v. Love, where you are giving the opportunity, but then going forward, you're waiving it. And I think at this point, I'm offering the exhibit, getting them admitted to the plaintiff's arraignment. So I would ask support to the defendant's case. Thank you. Thank you, counsel. We'll take the matter under advisement.